# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CRAIG MURPHY,                                )
                                             )
        Plaintiff,                           )
                                             )          2:21-cv-01624
        v.                                   )
                                             )          Chief Judge Mark R. Hornak
EPIQ GLOBAL BUSINESS                         )
TRANSFORMATION SOLUTIONS, LLC,               )
and MORGAN, LEWIS & BOCKIUS LLP,             )
                                             )
        Defendants.                          )

## OPINION

**Mark R. Hornak, Chief United States District Judge**

Plaintiff, Craig Murphy, was hired by Defendant Epiq Global Business Transformation Solutions, LLC ("Epiq")[1] to work as a Record Specialist in the Pittsburgh office of Defendant Morgan, Lewis & Bockius LLP ("Morgan Lewis") (collectively "Defendants"). In November 2021, Mr. Murphy filed this action alleging that Defendants discriminated against him on the basis

---

[1] Plaintiff named Document Technologies, Inc. ("DTI") as another Defendant in his Complaint. (ECF No. 1, at 2 (listing DTI as "the parent company" of Epiq).) In its Brief in support of the Motion to Compel, Epiq takes issue with the format of how Plaintiff described the relationship between the two entities but offered no real explanation as to what the correct definition would be. (ECF No. 13, at 1). The Employment Agreement that the Defendants rely upon in support of their Motion to Compel seems to reflect that at the time Plaintiff started work, the employing entity was DTI, doing business as Epiq. (ECF No. 13-1, at 5) The Court need not definitively unravel that as a matter of history, since publicly available information indicates that the two companies merged and operate together, and under the name "Epiq." *Epiq Systems and DTI Rebrand as Epiq*, Epiq (Jan. 22, 2018), https://www.epiqglobal.com/en-us/resource-center/news/epiq-systems-and-dti-rebrand-as-epiq. As indicated on the Employment Agreement provided by Defendants, DTI was "doing business as" Epiq when it hired Plaintiff. (ECF No. 13-1, at 5 ("As a condition of my employment with DOCUMENT TECHNOLOGIES, LLC, d/b/a Epiq Business Solutions . . . .").) "The designation 'd/b/a' means 'doing business as' but is merely descriptive of the . . . corporation who does business under some other name. Doing business under another name does not create an entity distinct from the [corporation] operating the business." *Duval v. Midwest Auto City, Inc.*, 425 F. Supp. 1381, 1387 (D. Neb.1977), *aff'd*, 578 F.2d 721 (8th Cir. 1978). For these purposes, it therefore appears that Plaintiff and Defendant agree that at the time his employment commenced, Plaintiff was an employee of DTI, which was doing business as Epiq. But as of the date of the Motion to Compel, the accurate label for that Defendant was in fact Epiq. And the same lawyers have entered their appearance on the docket for DTI and Epiq. (ECF Nos. 9, 11). For purposes of this Opinion, the Court refers to the non-Morgan Lewis Defendants as "Epiq."

of his race, subjected him to a hostile working environment, and retaliated against him based on

his complaints, all in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981.

(ECF No. 1, ¶¶ 20, 21.) In response to Mr. Murphy's Complaint, Defendants filed a Motion to

Compel Arbitration. (ECF No. 12.) Plaintiff filed his Response (ECF No. 15), and Defendants

filed their Reply (ECF No. 18).

This Court then issued an Order concluding that "the motion for summary judgment

standard, rather than the motion to dismiss standard, is the appropriate standard to apply in

resolving Defendants' Motion to Compel Arbitration." (ECF No. 25, at 3.) In that Order, this Court

also ordered Plaintiff to "file a Declaration and/or other materials compliant with Federal Rule of

Civil Procedure 56(c) in response to Defendants' proffered evidence and in support of any of the

factual assertions Plaintiff has advanced in opposition to the Motion to Compel." (*Id.* at 3–4.)

Pursuant to that Order, Plaintiff filed a Supplemental Response to Defendant's Motion to

Compel (ECF No. 26) and Defendants filed their Reply (ECF No. 27). Upon reviewing the briefing

and record evidence provided, the Court concludes that there is no genuine dispute as to the

existence of an enforceable arbitration agreement applicable to this dispute between Plaintiff and

Defendants. For this reason, as further explained below, Defendants' Motion to Compel

Arbitration is GRANTED.

## I.      **BACKGROUND**

In its review of the Plaintiff's Complaint (ECF No. 1) and the Defendants' Motion to

Compel Arbitration (ECF No. 12),[2] the Court determined that the question of whether there was

---

[2] In his response to Defendant's Motion, Plaintiff stated that "Defendants failed to serve the Plaintiff with a five (5)
day notice before filing its motion to compel arbitration." (ECF No. 15, at 14 (citing 9 U.S.C. § 4).) This argument is
based on an apparent belief on the part of that Plaintiff that separate notice of the Motion should have been given prior
to filing of the Motion with the Court. The Federal Arbitration Act, to which Plaintiff refers, states in relevant part,
"Five days' notice in writing of such application [to compel arbitration] shall be served upon the party in default.
Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure." 9 U.S.C. § 4. Federal
Rule of Civil Procedure 5(b) provides that service is completed when a paper is filed with the Court's electronic filing

an agreement to arbitrate between Plaintiff and Defendants was at issue. (ECF No. 25, at 2.) Accordingly, pursuant the Third Circuit's opinion in *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 771–76 (3d Cir. 2013), this Court concluded that the "motion for summary judgment" standard applies in in resolving the pending Motion. (ECF No. 25, at 1–2.) Thus, the question before the Court is whether there is a genuine dispute of material fact as to the existence of an enforceable arbitration agreement applicable here. (*See id.*)

In their Motion to Compel Arbitration, Defendants averred that Mr. Murphy agreed to arbitrate his claims when Plaintiff "electronically signed his Acknowledgment of the Employment Agreement," which contained an arbitration clause. (ECF No. 13, at 2–3.) Defendants supported this claim with proffered evidence that is consistent with the form required for summary judgment by Rule 56(c) of the Federal Rules of Civil Procedure. Specifically, Defendants provided a Declaration of Tesha Broom, a Human Resources Business Partner employed with Epiq (ECF No. 13-1, at 1–4), a copy of the Employment Agreement which included an arbitration provision (*id.* at 5–6), and a screenshot of Plaintiff's electronic acknowledgment of the employment agreement, dated September 17, 2018, at 8:10:15 AM (*id.* at 7).

In his Response to Defendants' Motion to Compel, Mr. Murphy contested that a valid and enforceable arbitration agreement existed between himself and the Defendants. In support of this argument, Mr. Murphy explained that although this civil action was filed on November 9, 2021, two months later, on January 5, 2022, Plaintiff logged into his "Epiq Workday account and accessed an **unsigned arbitration agreement**." (ECF No. 15, at 2 (emphasis in original).) Mr.

---

system. Defendants filed the Motion to Compel Arbitration on March 4, 2022. (ECF No. 12.) There has been copious briefing and docket activity in this case in the interim period, including by the Plaintiff. Put simply, the five-day notice provision is intended to provide those in Plaintiff's position with that minimum amount of fair warning before the Court could act on the request to compel arbitration. That purpose has plainly been fulfilled here, given the briefing and other docket activity over the intervening nine months.

Murphy then stated that the signed agreement that Defendants' counsel sent him via email on February 1, 2022 "differed from the agreement on the Workday account." (ECF No. 15, at 2–3.) In that Response, however, Mr. Murphy did not submit any opposing affidavits or declarations and his assertions were not in a form that complies with the summary judgment standard required by Rule 56(c) of the Federal Rules of Civil Procedure. In short, he did not support his position as required by the applicable rules.

The Court thus determined that further development of the record was necessary to evaluate whether there is a genuine dispute as to the existence of an enforceable arbitration agreement. (ECF No. 25, at 2.) To allow him to develop the record, the Court ordered Mr. Murphy to "file a Declaration and/or other materials compliant with Federal Rule of Civil Procedure 56(c) in response to Defendants' proffered evidence and in support of any of the factual assertions Plaintiff has advanced in opposition to the Motion to Compel." (*Id.* at 3–4.) The Court stated that the evidence proffered by Mr. Murphy shall at least accomplish two things: (1) "expound upon the alleged discrepancy between the unsigned Employment Agreement he accessed on his Workday account on January 5, 2022 and the one he received through correspondence with Defendants' counsel on February 1, 2022" and (2) "directly respond to Defendants' assertions via the Broom Declaration and accompanying exhibits." (*Id.*) Pursuant to that Order, Plaintiff filed a Supplemental Response to Defendant's Motion to Compel (ECF No. 26) and Defendants filed their Reply (ECF No. 27). The matter is now ripe for disposition.

## II.   DISCUSSION

### A.  The Arbitration Clause Applies to Both Defendant Companies

Plaintiff argues that "nonsignatory Defendants [Morgan Lewis] cannot benefit from said arbitration agreement because Plaintiff does not make mention of the arbitration agreement in his

complaint and therefore the doctrine of equitable estoppel is unavailing to 'intertwined' Defendants." (ECF No. 15, at 5 (citing *Griswold v. Coventry First LLC,* 762 F.3d 264, 271–73 (3d Cir. 2014); *O'Hanlon v. Uber Tech., Inc.*, 990 F.3d 757, 765–67 (3d Cir. 2021)).) The Court concludes that cited cases do not support Plaintiff's assertion and concludes that Morgan Lewis is a party which may seek to compel arbitration.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, governs written agreements to arbitrate in contracts involving interstate commerce. The FAA "permits courts to apply state-law doctrines related to the enforcement of arbitration agreements" and "does not 'alter background principles of state contract law regarding the scope of agreements (including who is bound by them).'" *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1643 (2020) (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009)). Thus, the question of whether a non-signatory can enforce an arbitration agreement should be answered by consideration of state law. The Court considers both Pennsylvania law, which Plaintiff avers should apply because the contract was formed in Pennsylvania (ECF No. 15, at 3–4), and Georgia law, which the Employment Agreement at issue here identifies as the governing law (ECF No. 13-1, at 6 ¶ 11). The Court concludes that the answer under both is the same.

First, Defendants argue, and the Court agrees, that the arbitration clause applies to both Defendants under the principle of "reverse estoppel," even though Morgan Lewis is not a signatory to the involved agreement. (ECF No. 13, at 10.) "Under Pennsylvania law 'alternative equitable estoppel' or 'reverse estoppel' allows 'non-signatories to an arbitration agreement [to] enforce such an agreement when there is an obvious and close nexus between the non-signatories and the contract or the contracting parties.'" (*Id.* (citing *Heaster v. EQT Corp.*, No. 19-1463, 2020 WL 5536078, at *6 (W.D. Pa. Aug. 17, 2020); *Noye v. Johnson & Johnson Servs. Inc.*, 765 F. App'x

746, 745–48 (3d Cir. 2019)).)

In determining whether there is a "close nexus" between the non-signatory and the contract or the contracting parties, Pennsylvania courts have looked to several factors: "whether the claims at issue are 'inextricably entwined with the [c]ontract,'" whether the claims "stem[] from the same incident and implicate[] identical legal principles," or "the breadth of the relevant arbitration provision, such as whether the definition of 'claim' is restricted 'to one arising between the parties' named in the contract." *Noye*, 765 F. App'x at 746 (citing *Elwyn v. DeLuca*, 48 A.3d 457, 463 (Pa. Super. Ct. 2017); *Dobbs v. Pulte Home Corp.*, 909 A.2d 348, 351–52 (Pa. Super. Ct. 2006)).

Considering those factors here reveals that Morgan Lewis bears a close nexus with both the contract and the contracting parties—Epiq and Mr. Murphy. Morgan Lewis and Epiq are affiliates via a Business Process Solutions Master Services Agreement between them, which provides that that Epiq "recruits and employs individuals titled 'Records Specialists' who provide recordkeeping services in some of Morgan Lewis's offices." (ECF No. 13, at 2.) Mr. Murphy was hired by Epiq to work at Morgan Lewis's Pittsburgh office as a Record Specialist per this service agreement between the Defendant companies. As Defendants highlight, "the work assignment with Morgan Lewis that is at issue in this case would not have occurred but for Murphy's employment relationship with EPIQ." (*Id.* at 11.) Moreover, Mr. Murphy does not differentiate his claims against each Defendant company, meaning that his claims against each stem from the same incident and implicate identical legal principles. Finally, the Employment Agreement between Plaintiff and Epiq states that the agreement applies to Epiq and its "affiliates." (ECF No. 13-1, at 5.) Each of these undisputed facts demonstrates a close nexus between Morgan Lewis and the contract and the contracting parties. Thus, the Court concludes that the arbitration clause applies to both Defendants under the reverse estoppel doctrine.

6

The Court reaches the same conclusion under Georgia law. Specifically, "equitable estoppel" under Georgia law "allows a nonsignatory to an arbitration agreement to compel or to be compelled by a signatory to arbitrate under certain circumstances in which fairness requires doing so."[3] *Lawson v. Life of the South Ins. Co.*, 648 F.3d 1166, 1172 (11th Cir. 2011) (citing *Order Homes, LLC v. Iverson*, 685 S.E.2d 304, 310 (Ga. Ct. App. 2009)). Under this principle, Georgia courts have permitted non-signatories to enforce arbitration agreements in numerous instances. *See Autonation Fin. Servs. Corp. v. Arain*, 592 S.E.2d 96, 98–99 (Ga. Ct. App. 2003) (citing *Paine, Webber, Jackson & Curtis v. McNeal*, 239 S.E.2d 401 (Ga. Ct. App. 1977); *Brinson v. Martin*, 469 S.E.2d 537 (Ga. Ct. App. 1996); *Comvest, LLC v. Corp. Sec. Group*, 507 S.E.2d 21 (Ga. Ct. App. 1998)).

The cases cited by the Plaintiff do not undermine the application of equitable estoppel to allow non-signatories to be bound to and then enforce an arbitration agreement. *See Griswold*, 762 F.3d at 271 ("Both Georgia and Pennsylvania law allow non-signatories to be bound to an arbitration agreement."); *O'Hanlon.*, 990 F.3d at 765 ("[E]quitable estoppel [may] bind non-signatories to an arbitration clause when the non-signatory knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement." (quoting *Washburn v. N. Health Facilities, Inc.*, 121 A.3d 1008, 1015 (Pa. Super. Ct. 2015))).

It is immaterial that Plaintiff did not "make mention of the arbitration agreement in his complaint" (ECF No. 15, at 5). The record facts already highlighted by the Court—namely that

---

[3] Defendants also accurately argued that the doctrine of equitable estoppel also applies under Pennsylvania law. (ECF No. 13, at 11–12 ("District Courts in this Circuit applying Pennsylvania law have recognized that 'under the doctrine of equitable estoppel, "a plaintiff who treats the non-signatory and signatory party as jointly liable for the same alleged conduct is estopped from resisting arbitration with the non-signatory."'") (citing *Kauffman v. U-Haul Int'l, Inc.*, No. 5:16-cv-4580, 2018 WL 4094959, at *12 (E.D. Pa. Aug. 27, 2018); *Hautz Const., LLC v. H & M Dep't Store*, CA No. 12-3478, 2012 WL 5880370, at *14 (D.N.J. Nov. 20, 2012); *Caparra v. Maggiano's Inc.*, CA No. 14-05722, 2015 WL 5144030, at *8 (E.D. Pa. Sept. 1, 2015)). The Court concludes that the doctrine of equitable estoppel under Pennsylvania law applies in the same way as equitable estoppel applies under Georgia law—both of which allow Morgan Lewis to seek to compel arbitration in this case.

"the work assignment with Morgan Lewis that is at issue in this case would not have occurred but for Murphy's employment relationship with EPIQ" (ECF No. 13, at 11), that Mr. Murphy's claims are asserted by him against each Defendant company and stem from the same incident and implicate identical legal principles (ECF No. 1), and that the Employment Agreement between Plaintiff and Epiq explicitly states that the agreement applies to Epiq and its "affiliates" (ECF No. 13-1, at 5)—demonstrate that the "fairness" central to the estoppel principles noted above requires that both Epiq and Morgan Lewis are permitted to compel the arbitration of Mr. Murphy's claims. Thus, the Court concludes that Pennsylvania law and Georgia law both permit Morgan Lewis to seek to compel arbitration in this case.

**B. <u>There Is No Genuine Dispute of Material Fact As to Whether an Arbitration Agreement Existed Between Plaintiff and Defendants</u>**

Looking then to the Court's directive to Plaintiff to "directly respond to Defendants' assertions via the Broom Declaration and accompanying exhibits" (ECF No. 25, at 3–4), the Court concludes that Plaintiff's evidence is insufficient to establish a genuine dispute of material fact.

In Ms. Broom's Declaration and annexed exhibits provided by Defendants, she asserts that "[o]n September 17, 2018, at 8:10 a.m., Murphy electronically signed his Acknowledgment of the Employment Agreement."[4] (ECF No 13-1, at 3 ¶ 11.) In his response, Mr. Murphy does not directly address nor contest this assertion by Ms. Broom. Instead, Plaintiff states that Defendants' counsel sent him "a purported electronic signature captioned EA NE GBTS titled as a Doc. BPS

---

[4] Plaintiff asserts that Ms. Broom's declaration must be stricken from the record because it was not properly authenticated and, even if authenticated, it "constitutes nothing more than hearsay in the form of an out of court statement to prove a truth." (ECF No. 15, at 13–14.) As the Court stated in its Order, Ms. Broom's declaration is consistent with the form of summary judgment filings required by Rule 56(c) of the Federal Rules of Civil Procedure. Ms. Broom made her declaration under the penalty of perjury, as indicated by the statement at the bottom of the declaration and Ms. Broom's signature. (ECF No. 13-1, at 4.) This form of declaration may be used in lieu of a notarized affidavit. 28 U.S.C. § 1746. Moreover, while this declaration is an "out of court statement," such supporting affidavits are expressly authorized by Federal Rule of Civil Procedure 56(c)(1)(A) and here, the Declaration's content may be reduced to admissible evidence, *i.e.*, the declarant's testimony. Fed. R. Civ. Pro. 56(c)(4). Thus, Plaintiff's objections are without merit.

Employment Agreement 2018 Non-exempts (002) bearing two dates 8/13/2018 followed by 09/07/2018." (ECF No. 26, at 2.)[5] Since Mr. Murphy does not actually controvert the fact of his electronic execution of the Employment Agreement as developed in the record by Defendants via the Broom Declaration, the Court can consider the unrebutted fact as set out in that Declaration and its attachment that Mr. Murphy signed the acknowledgement that states "I acknowledge that I have carefully read the attached employment agreement. I am satisfied that I understand it completely, and I agree to be bound by its terms and conditions. I expressly acknowledge that the foregoing agreement contains a binding arbitration provision" (ECF No. 13-1, at 7; ECF No. 26-5, at 4), as being undisputed. *See* Fed. R. Civ. Pro. 56(e)(2).

Mr. Murphy also does not address nor contest Ms. Broom's statements that Mr. Murphy, as a new hire, had login credentials to access Workday and "review various policies, complete training, and complete paperwork" (ECF No. 13-1, at 2 ¶ 8). Ms. Broom also states, and Mr. Murphy does not address nor contest, that "[a]mong the paperwork is an Employment Agreement." (*Id.* at 3 ¶ 9.) The Court can and does thus conclude that Mr. Murphy had access to the Employment Agreement through his Workday login. *See* Fed. R. Civ. Pro. 56(e)(2).

Now looking to the Court's directive to Plaintiff to support his position as to an alleged discrepancy between the "unsigned" Employment Agreement that Mr. Murphy accessed on his Workday account on January 5, 2022, (*i.e.*, after Plaintiff commenced this action and the Court had designated the case for placement into the Alternative Dispute Resolution Program) (ECF No. 26-3), and the one he received from Defendants' counsel on February 1, 2022 (ECF No. 26-5), the Court concludes that none of the evidence provided by Plaintiff on this point indicates there is a genuine dispute of material fact as to his execution of an Employment Agreement with the

---

[5] The actual electronic execution date on the Acknowledgement submitted by Plaintiff at ECF No. 26-5 is "9/17/2018," not "9/07/2018."

arbitration obligation as set out in the Broom Declaration. Although Mr. Murphy indicated that the numbering of paragraphs differed between the agreement he accessed through his Workday account in January 2022 and the one Defendants' counsel sent him in February 2022 (ECF No. 26, at 2), the substance of each of the paragraphs in the agreements is identical (ECF Nos. 26-3, 26-5). The fact that those agreements are differently numbered is not "material" because it does not bear on whether an arbitration obligation existed in one of the agreements but not the other, or most importantly, whether it existed in the Agreement he acknowledged with his electronic signature as set out in the Broom Declaration. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (defining "material fact" as "facts that might affect the outcome of the suit under the governing law").

Moreover, the January 2022 form agreement referenced by the Plaintiff here was accessed on-line and after the commencement of this action. But the relevant document for the Court to consider is the one that Mr. Murphy saw and signed on to at the start of his employment and as set out in the Broom Declaration. Plaintiff does not contest that element of the Broom Declaration with record evidence.

In Plaintiff's discussion of the differences between the two agreements to which he cites, he also seems to argue that Defendants may have "falsif[ied] documents in order to avoid liability." (*See* ECF No. 26, at 3.) To support this vague and unsupported assertion, Plaintiff provides a letter from Matthew J. Cates, Counsel for Respondent, to the U.S. Equal Employment Opportunity Commission ("EEOC") on January 26, 2021, which in relevant part states that Mr. Murphy "was never employed by Document Technologies, LLC" (ECF No. 26-6.) Mr. Murphy then points to copies of his Wage and Tax Statements from 2018 and 2019 (ECF No. 26-7), which lists Document Technologies LLC as the "employer" to show that Mr. Cates's statement to the EEOC was false.

(*See* ECF No. 26, at 2.) Ultimately, the Court concludes that this line of argument is not material because Mr. Murphy generally states that he "became highly suspicious of Epiq's internal processes" (*id.*) without providing specific allegations as to what he believes Defendants falsified. Nor does the speculative assertion of fraud as to another matter (his Wage and Tax Statements) create a genuine issue of fact as to the very different issue here—whether Plaintiff agreed to arbitrate these claims. Thus, this argument and proffered evidence does not place the existence of an enforceable arbitration agreement in genuine dispute.

In determining that Mr. Murphy signed the acknowledgment of the Employment Contract, which included reference to the arbitration provisions, the Court concludes that there is no genuine dispute of any *material* fact as to whether there was an applicable arbitration agreement between Plaintiff and the Defendants that the parties made at the outset of Mr. Murphy's employment.

## C.  The Arbitration Clause Is Valid, Enforceable, and Covers Plaintiff's Claims

As previously stated, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, governs written agreements to arbitrate in contracts involving interstate commerce. 9 U.S.C. § 1; *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 (1967). Plaintiff's assertions that the FAA only applies to maritime and admiralty controversies (ECF No. 15, at 6), and that he is exempt from enforcement of an arbitration agreement under the FAA because of provisions in the Fair Labor Standards Act "FLSA" (*id.* at 10) are unfounded. As Defendants assert, well-settled precedent demonstrates that the FAA applies here, and Plaintiff is not exempt from its reach. (*See* ECF No. 18, at 5 (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25–26 (1991) ("It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA."); *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001) ("Section 1 exempts from the FAA only contracts of employment of transportation workers.").) The Court

11

agrees.

Once a court determines a valid arbitration agreement exists, as is the case here, the Court applies state-law principles to determine if the case at hand falls within the scope of the arbitration agreement, while giving "due regard to the federal policy favoring arbitration." *In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 521–22 (3d Cir. 2019) ("[W]hile federal law may tip the scales in favor of arbitration where state interpretive principles do not dictate a clear outcome, may displace state law through preemption, or may inform the interpretive analysis in other ways, applicable state law governs the scope of an arbitration clause . . . ." (internal citations omitted)). Once a court is satisfied that the parties' dispute is arbitrable, it must stay a pending lawsuit on application of one of the parties until such arbitration is concluded and order the parties to proceed to arbitration consistent with their agreement. 9 U.S.C. §§ 3-4; *Lloyd v. Hovensa, L.L.C.*, 369 F.3d 263, 269 (3d Cir. 2004).

Under the FAA framework, "arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal citations omitted). When a party makes a motion to compel arbitration, a court must therefore resolve two issues: (1) whether the parties are bound by a given arbitration clause, and (2) whether an arbitration clause in a concededly binding contract applies to the parties' dispute. *See, BG Grp. P.L.C. v. Republic of Argentina*, 134 S. Ct. 1198, 1206-07 (2014); *Granite Rock Co. v. Int'l Borth. Of Teamsters*, 561 U.S. 287, 296 (2010); *Howsam*, 537 U.S. at 83; *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 54-55 (3d Cir. 2001).

The arbitration clause in the Employment Agreement here states in relevant part:

THE COMPANY AND I AGREE THAT ANY DISPUTE OR CONTROVERSY (INCLUDING ONES THAT ALREADY ARE THE SUBJECT OF LITIGATION) ARISING OUT OF, RELATING TO, OR CONCERNING ANY INTERPRETATION, CONSTRUCTION, PERFORMANCE, BREACH OR TERMINATION OF THIS AGREEMENT, SHALL BE SETTLED BY ARBITRATION TO BE HELD IN ACCORDANCE WITH THE EMPLOYMENT DISPUTE RESOLUTION RULES THEN IN EFFECT OF THE AMERICAN ARBITRATION ASSOCIATION (THE "ASSOCIATION").

(ECF 13-1, 5 ¶ 9.)

Under both Pennsylvania law and Georgia law, clearly unambiguous contract terms will be enforced according to the term's plain language. *E.R. Linde Const. Corp. v. Goodwin*, 68 A.3d 346, 349–50 (Pa. Super. 2013) (applying Pennsylvania law); *Azzouz v. Pediatrics, P.C.*, 675 S.E.2d 314, 317–318 (Ga. Ct. App. 2009) (applying Georgia law). The arbitration clause in the Employment Agreement between Mr. Murphy and Defendants states, "THIS ARBITRATION CLAUSE RELATES TO THE RESOLUTION OF ALL DISPUTES RELATING TO ALL ASPECTS OF THE EMPLOYER/EMPLOYEE RELATIONSHIP" and goes on to identify specific disputes including disputes arising out of Title VII of the Civil Rights of Act of 1964. (ECF 13-1, at 5 ¶ 9.)

In his Complaint, Mr. Murphy alleges that Defendants discriminated against him on the basis of his race, subjected him to a hostile working environment, and retaliated against him based on his complaints, all in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981. (ECF No. 1, at ¶¶ 20(a), 20(b), 21.) The Court thus concludes that Mr. Murphy's claims against Defendants fall within the scope of the arbitration clause according to the plain and unambiguous language of the arbitration clause.

Plaintiff also contests whether the arbitration clause is enforceable under Georgia Law. (ECF No. 26, at 3–5.) The Employment Agreement states that the laws of the state of Georgia shall govern. (ECF No. 12-1, at 6 ¶ 11.) Plaintiff argues that "[t]he laws of the State of Georgia do not

permit contract waivers of jury trials rights prior to litigation." (ECF No. 26, at 4.) The Court concludes that the Plaintiff's argument is unfounded and that arbitration agreements, such as the one at issue here, are enforceable under Georgia law. *See Bank South, N.A. v. Howard*, 444 S.E.2d 799, 799 n.5 (1993) (contrasting waiver of jury trial and confession of judgment with arbitration clauses); OCGA § 9-9-2.

### D.  The Arbitration Clause Is Not Unconscionable

Plaintiff also argues that the arbitration agreement is unenforceable because the substance of its terms is "unconscionable and lacks fundamental fairness." (ECF No. 15, at 3.) Applying both Georgia and Pennsylvania law, the Court concludes that this argument is meritless.[6] Under Pennsylvania law, a contract is substantively unconscionable if it "unreasonably favors the party asserting it." *Quilloin v. Tenet Health Sys. Phila., Inc.*, 673 F.3d 221, 230 (3d Cir. 2012). Similarly, under Georgia law, a contract is substantively unconscionable if it is a contract that "no sane man not acting under delusion would make and that no honest man would take advantage of" and it is "abhorrent to good morals and conscience" and "takes a fraudulent advantage of another." *Innovative Images v. Summerville*, 848 S.E.2d 75, 83 (2020) (quoting *NEC Techs., Inc. v. Nelson*, 478 S.E.2d 769, 771 (1996)). The Court concludes that none of the terms highlighted by the Plaintiff fall short under either of these standards.

Plaintiff first argues that the agreement is unconscionable because "the contract purports to confer jurisdiction of this matter outside of its proper venue and within the jurisdiction of the State of Georgia." (ECF No. 15, at 3.) Plaintiff avers that this unreasonably favors the Defendants first because it "requires Plaintiff to travel." (*Id.*) The Court concludes that this argument does not rise

---

[6] As stated previously, the FAA "permits courts to apply state-law doctrines related to the enforcement of arbitration agreements." *GE Energy*, 140 S.Ct. at 1643. Plaintiff asserts that Pennsylvania law should apply because "[t]he formation of the alleged arbitration agreement occurred within the Commonwealth of Pennsylvania." (ECF No. 15, at 4.) The Employment Agreement itself identifies as Georgia the governing law (ECF No. 13-1, at 6 ¶ 11).

to the level of unconscionability. As Defendants articulated, forum selection clauses in contracts are "presumptively valid." (ECF No. 18, at 3 (citing *Jordan Acquisitions Grp. LLC v. Adam Techs., Inc.*, CA No. 09-542, 2009 WL 2473987, at \*6 (W.D. Pa. Aug. 12, 2009)).) Defendants also note that there is a process by which Plaintiff can object to the location of the arbitration and the independent American Arbitration Association will decide the issue. (*See* ECF No. 18, at 3 (citing *Beery v. Quest Diagnostics, Inc*., 953 F. Supp. 2d 531, 545 (D.N.J. 2013).) *See also* Administrative Review Council Review Standards, *American Arbitration Association* (Sept. 17, 2021), https://adr.org/sites/default/files/document_repository/AAA379_ARC_ReviewStandards.pdf ("Should the parties have a dispute about the locale of the arbitration, this guide will assist the parties in understanding the process to be followed in submitting their dispute to ARC and the standards the ARC uses to make its determination.").

Plaintiff further argues that conferring jurisdiction on the State of Georgia is unconscionable because "28 U.S.C. § 1446 does not permit reverse removal from federal courts to state courts." (ECF No. 15, at 3.) Contrary to Plaintiff's claim, this statute governs the process of removing a civil action from a State court to a federal district court and does not apply to the validity of a forum selection clause within an arbitration agreement. This claim does not establish unconscionability.

Next, Plaintiff argues the agreement is unconscionable because it "attempts to stipulate subject matter jurisdiction over this matter by vesting power in a private entity, namely the American Arbitration [Association]."[7] (*Id.* at 4.) As noted by the Defendants, the American Arbitration Association ("AAA") and its rules "have been (and continue to be) applied in cases

---

[7] Plaintiff identifies the private entity as "the American Arbitration Act." (ECF No. 15, at 4.) The arbitration clause in the Employment Agreement states that the arbitration will be held in accordance with the rules of the "American Arbitration Association," which appears to be the private entity that plaintiff meant to identify. (ECF No. 13-1, at 5.)

throughout the country" and the rules of this entity will apply equally to both Plaintiff and Defendant. (ECF No. 18, at 3.) Plaintiff did not argue or show that the AAA or its rules unreasonably favor the Defendants, and here, they apply because that is the agreement of the parties. Thus, the Court concludes that this claim does not establish unconscionability.

Finally, Plaintiff argues that the agreement is unconscionable because it "attempts to stipulate control of the statute of limitations" by barring claims commenced more than one year after the event giving rise to the claim. (ECF No. 15, at 4.) Plaintiff argues that he was "free to litigate this action after receiving his right-to-sue letter(s) from the Equal Employment Opportunity Commission [EEOC]" (*id.*) and Defendants agree that "the one-year period is tolled as of the date that Plaintiff filed EEOC Charge" (ECF No. 18, at 4). Moreover, as Defendants assert, time limitation provisions in arbitration agreements are not substantively unconscionable if they are reasonable and are not "unduly favorable" to one party. (*See id.* (citing *Quillon*, 673 F.3d at 234).) Additionally, as Defendant's highlight, courts in Third Circuit "have routinely held that a one-year statute of limitations is not manifestly unreasonable." *Mr. Sandless Franchise, LLC v. Karen Cesaroni LLC*, 498 F. Supp. 3d 725, 736 (E.D. Pa. 2020) (collecting cases). Here, the one-year time limitation is not unreasonable and importantly and, in any event, does not prevent Plaintiff from bringing his claims here.[8] (ECF No. 18, at 4.) Thus, the time limitation provision does not make the arbitration agreement unconscionable.

In sum, the Court concludes that Plaintiff has not provided any support for his claim that the agreement is unconscionable. Thus, the Court thus concludes that the arbitration clause at issue

---

[8] Plaintiff's employment was terminated on May 21, 2020. (ECF No. 1, ¶ 17.) Plaintiff filed an inquiry against Epiq on August 15, 2020 (*id.* ¶ 18), thereby tolling the time limitation provision (ECF No. 18, at 4). Plaintiff received the right to sue letter from the EEOC in August 2021 (ECF No. 1, ¶ 19) and filed this action in November 2021 (ECF No. 1). Thus, it appears that the Plaintiff acted within the time limitation set out in the arbitration clause and it had no impact on his assertion of his claims here.

here is valid and enforceable and, accordingly, the parties are bound by the clause.

### III.   PLAINTIFF'S MOTION FOR DECLARATORY JUDGMENT

Related to Defendant's Motion to Compel Arbitration is Plaintiff's pending Motion for Declaratory Judgment and Notice of a Constitutional Question Pursuant to Federal Rule of Civil Procedure 5.1 and 28 U.S.C. § 2403. (ECF No. 19.)[9] In this Motion for Declaratory Judgment, Plaintiff seeks (1) judgment declaring 28 U.S.C. § 651 unconstitutional as applied to litigants which have demanded a jury trial; (2) judgment declaring 28 U.S.C. § 2072 unconstitutional as applied to litigants which have demanded a jury trial; (3) judgment declaring 9 U.S.C. §§ 1-16 unconstitutional as applied to litigants which have demanded a jury trial on legal issues not involving admiralty and maritime controversies; and (4) injunctive relief or any other relief the court deems appropriate with regard to this matter. (ECF No. 23, at 8.)

28 U.S.C. § 651(b) directs "United States district court[s] [to] authorize, by local rule adopted [], the use of alternative dispute resolution processes in all civil actions." 28 U.S.C. § 2072 enables the Supreme Court to have "power to prescribe general rules of practice and procedure . . . for cases in the United States district courts . . . ." Plaintiff argues that both of these statutes are unconstitutional because they lack explicit language stating that "where a trial by jury is demanded, the use of ADR may not be compelled by a court." (ECF No. 23, at 3.) More specifically, Plaintiff avers that the compulsory alternative dispute ("ADR") resolution program adopted by this Court via its Local Rule 16.2 infringes on his right to a trial by jury and his rights to due process and equal protection of laws. (ECF No. 23, 2–4.) Since the Court concluded that there is a valid, enforceable arbitration agreement between the parties sending this case to the agreed upon arbitration process, and that Local Rule has not actually been applied here to generate an ADR

---

[9] Plaintiff filed an errata, correcting the order of pages in the Motion for Declaratory Judgment. (ECF No. 23.) For ease of reference, the Court cites to Plaintiff's errata Motion.

proceeding under the Court's processes, Plaintiff's objections to the application of Local Rule 16.2 are both moot and unripe.

Even if the objections were not moot and unripe, they are nevertheless meritless because these statutes and Local Rule 16.2 do not infringe on a litigant's right to a trial by jury, but rather provide alternative processes for case resolution. In other words, they do not limit or prevent a civil jury trial but merely provide for participation in alternative case resolution processes *before* trial. Specifically, Local Rule 16.2 does not mandate that a case *must* be resolved through an alternative dispute resolution process, but rather it "makes[s] available to litigants a broad range of Court-sponsored ADR processes . . . without impairing the quality of justice or right to trial." LCvR 16.2 B. Thus, referral to an ADR process does not force a litigant to forego their right to a jury trial and thus does not infringe on such right.

9 U.S.C. §§ 1–16 encompasses the FAA. Plaintiff raises several arguments regarding the FAA and its applicability, as to which the Court concluded above that the FAA applies in this case and Plaintiff's claims are not exempt from coverage. Plaintiff also argues that the FAA is "unconstitutional as applied to controversies that are legal in nature in which a jury trial is demanded." (ECF No. 23, at 4.) The Court concludes this argument is also without merit. As Defendants highlight in their response, "the FAA has repeatedly been found constitutional, and Plaintiff presents no novel arguments to otherwise challenge its constitutionality." (ECF No. 24, at 4 (citing *Southland Corp. v. Keating*, 465 U.S. 1, 10–12 (1984); *Pierno v. Fidelity Brokerage Servs., LLC*, No. 20-3711-cv, 2021 WL 5986763, at *1 (2d Cir. Dec. 16, 2021) (citing *Perry v. Thomas*, 482 U.S. 483, 490 (1987); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 405 (1967)); *GGNSC Louisville Hillcreek, LLC v. Dockery*, No. 15-cv-908, 2016 WL 5478010, at *1–2 (W.D. Ky. Sept. 27, 2016); *Drawdy v. Don Jackson Chrysler Dodge Jeep, Inc.*,

No. 14-cv-03490, 2015 WL 12591774, at *3 (N.D Ga. Feb. 5, 2015)).

Moreover, Plaintiff does not advance a valid argument for how the FAA, and specifically section 1, "violates the equal protection clause of the Fifth amendment by arbitrary selection of employees exempted from arbitration." (ECF No. 23, at 8.) As articulated by Defendants, the Supreme Court has analyzed section 1 of the FAA and has declined to expand the scope of workers covered by the exemption beyond transportation workers. (ECF No. 24, at 6–8 (discussing *Circuit City v. Adams*, 532 U.S. 105 (2001)).)

In sum, there is nothing in the Plaintiff's motion to support entry of a declaratory judgment on the bases advanced by Plaintiff nor to award injunctive relief in this matter. Thus, the Court concludes that Plaintiff's Motion for such will be DENIED.

## IV.   CONCLUSION

The Court concludes that Plaintiff has not proffered record evidence to show there is a genuine dispute of material fact as to whether an enforceable arbitration agreement exists between Plaintiff and Defendant that covers his claims in this action. The record demonstrates that there is, and the claims advanced here fall within the scope of that agreement. Thus, the Court **GRANTS** the Motion to Compel Arbitration (ECF No. 12) and **ORDERS** the parties to arbitrate in the manner they have agreed upon. The Court also **DENIES** Plaintiff's Motion for Declaratory Judgment. (ECF No. 19.) This case will be stayed pending the final disposition of such arbitration.

An appropriate Order will issue.

**s/ Mark R. Hornak**
Mark R. Hornak
Chief United States District Judge

cc:   All registered CM/ECF users